The STATE of Ohio, Appellant,

v.

HARACK, Appellee.

[Cite as *State v. Harack*, 197 Ohio App.3d 157, 2011-Ohio-6021.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2011–01–003.

Decided Nov. 21, 2011.

</div>

Donald W. White, Clermont County Prosecuting Attorney, and David H. Hoffmann, for appellant.

Edward C. Perry, for appellee.

PIPER, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Municipal Court accepting and implementing the plea agreement between the state and defendant-appellee, Jason Harack. We affirm the decision of the trial court.

{¶ 2} On April 18, 2010, police arrested Harack after he approached two female pedestrians, ages 11 and 14, and asked the 11–year–old girl if she wanted to go to a party with him. The state filed two complaints alleging criminal child enticement pursuant to R.C. 2905.05. Harack later entered a no-contest plea to one charge, and the state dismissed the other charge. Harack was sentenced on May 24, 2010, to 180 days in the Clermont County Jail, with all but 13 days suspended, and was also placed on probation for three years. Harack was classified as a Tier I offender, which required him to register as a sex offender and meet reporting requirements pursuant to the Adam Walsh Act.

{¶ 3} On November 3, 2010, Harack, with new counsel, filed a postsentence motion to withdraw his no-contest plea under Crim.R. 32.1. Harack asserted that the trial court should permit him to withdraw his no-contest plea to avoid a manifest injustice because he had not been informed that he would be required to register and report for 15 years due to his sex-offender classification. A hearing on the motion to withdraw the plea was scheduled for December 23, 2010. The state and Harack's new attorney had engaged in discussions on how to resolve the issue presented in the motion. Immediately prior to the hearing, the state and Harack finalized a new plea agreement whereby the state agreed to amend Harack's charge from criminal child enticement to an aggravated-menacing charge. The parties agreed that the aggravated-menacing charge did not have any reporting or registration requirements.

{¶ 4} The parties appeared before the trial court and explained the situation, as well as the settlement terms of the pending motion. Upon confirming the

parties' agreement, the trial court permitted Harack to withdraw his plea, and then set aside its original entry specific to the child-enticement charge. The charge was amended according to the terms of the plea agreement, and the trial court accepted Harack's new plea of no contest to the aggravated-menacing charge. The trial court found Harack guilty of aggravated menacing and imposed the same sentence as had been previously imposed, except for the sex-offender classification and corresponding reporting and registration requirements. The originally dismissed second complaint remained dismissed.

{¶ 5} The state now appeals the decision of the trial court accepting Harack's plea withdrawal and implementing the terms of the plea agreement. The state raises the following assignment of error.

{¶ 6} "The trial court erred when it withdrew the defendant's plea of no contest in the absence of a post-sentence motion."

{¶ 7} The state argues in its assignment of error that the trial court lacked subject-matter jurisdiction to permit Harack to withdraw his plea and to accept the terms of the new agreement.

{¶ 8} The state does not deny the fact that it entered into the terms of the agreement before the hearing began, or that the trial court accepted the plea agreement exactly as set forth by the state and Harack. Ohio law is clear that "a plea bargain itself is contractual in nature and subject to contract-law standards. * * * Ohio law has consistently recognized that a settlement agreement constitutes a binding contract between the two parties." *State v. Butts* (1996), 112 Ohio App.3d 683, 685–686, 679 N.E.2d 1170.

{¶ 9} In an attempt to withdraw from the agreement it had previously orchestrated and implemented before the court, the state now argues that the trial court did not have proper subject-matter jurisdiction to accept the agreement offered by the parties, which was designed to dispose of the issue raised in Harack's pending motion. Because the state entered into a jointly recommended plea agreement, including sentencing, the only way the state can create a right to appeal is with a jurisdictional claim, because jurisdictional challenges can be raised by any party at any time. *Barker v. Waynesville* (June 24, 1996), Warren App. No. CA95–10–098, 1996 WL 346636.

{¶ 10} Municipal courts are created by and have their subject-matter jurisdiction determined by statute. R.C.1901.01. A municipal court in Ohio has jurisdiction over misdemeanors occurring within its territorial jurisdiction. R.C. 1901.20(A)(1). The filing of a complaint invokes the jurisdiction of the municipal court. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 12. There is no doubt that the trial court held proper subject-matter jurisdic-

tion over Harack's case, as the complaint was properly filed, alleging that Harack committed a misdemeanor offense in Clermont County.

{¶ 11} The state argues that while the trial court had jurisdiction to accept Harack's first plea, the trial court lacks the jurisdiction to reconsider its own final judgment in a criminal case without a pending motion unless the order is void or contains a clerical error. A trial court maintains jurisdiction over a case so that it may correct a manifest injustice because of a past plea. Crim.R. 32.1 states, "[T]o correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1 "enlarges a trial court's power over its judgments and allows the court to consider a defendant's motion to withdraw post-sentencing." *State v. Tate,* Cuyahoga App. No. 83582, 2004-Ohio-2979, 2004 WL 1277402, ¶ 10. In the instant situation, a motion was filed, which invoked the subject-matter jurisdiction of the court. See *State v. Buckwald,* Lorain App. No. 09CA009695, 2010-Ohio-3543, 2010 WL 2990881.

{¶ 12} We do not assert that the continuing jurisdiction inherent in Crim.R. 32.1 is procedurally unrestricted. Instead, Ohio case law is clear that a defendant cannot petition the trial court to withdraw his past plea on manifest-injustice grounds when that defendant has appealed his conviction and that conviction has been affirmed by an appellate court. See *State v. Gegia,* Portage App. No. 2003–P–0026, 2004-Ohio-1441, 2004 WL 574623, ¶ 22. However, that is not the case here. Harack did not appeal his conviction after the trial court accepted his no-contest plea, found him guilty, and imposed a sentence. Therefore, the trial court held continued jurisdiction to consider any motions asserting a manifest-injustice claim pursuant to Crim.R. 32.1.

{¶ 13} The state argues that the trial court lacked jurisdiction because Harack withdrew his Crim.R. 32.1 motion before, or during, the hearing that brought before the court the parties who carried with them the resolution to Harack's pending motion. The record is clear that Harack's motion to withdraw was not withdrawn until after the hearing and was pending at the time the trial court made its decision to accept the terms of the amended plea agreement.

{¶ 14} Because Harack filed a motion claiming manifest injustice, the trial court scheduled a hearing on the motion for December 23, 2010. Although the state and Harack agreed to new terms prior to the hearing, the parties appeared before the trial court on December 23, 2010, because of the pending motion. The new plea agreement had to be accepted and journalized by the trial court. During the opening moments of the hearing, Harack's counsel stated, "[W]hat we're proposing, Judge, I think there is an entry withdrawing the motion, withdraw the plea that we filed on the [case No.] 1954 charge. We've been in

conversations with the prosecutor's office about amending the conviction from criminal child enticement to aggravated menacing, leaving the court's sentence in tact [sic] as it what [sic] was ordered last May but for the sex offender registration requirement * * *." The fact that Harack's counsel was *proposing* to withdraw the motion demonstrates that the motion was still pending at the time the hearing occurred.

{¶ 15} During the hearing, the state admitted that it was possible that Harack had not been informed that he had to register as a tiered sex offender as part of his original plea.[1] The state confirmed to the court that it had agreed to the terms of the new plea agreement whereby Harack would withdraw his previous plea and then plead to the amended charge. After setting forth the details leading up to the new agreement, as well as the terms, the following exchange occurred:

{¶ 16} "[Court] Do you agree with him withdrawing the plea of no contest?

{¶ 17} "[State] Yes, sir. We've had several discussions and, yes, I'll sign it.

{¶ 18} "[Court] Is that the entry?

{¶ 19} "[State] That's his entry withdrawing, yes, sir.

{¶ 20} "[Court] So if the entry of no contest is withdrawn the state then is back in the position of facing this charge of criminal child enticement, 2905.05. That is going to be amended today to a 2903.21, aggravated menacing charge?"

{¶ 21} Once the court was informed that the state had negotiated the new plea agreement, the court permitted Harack to withdraw his prior plea and accepted Harack's new plea of no contest to the aggravated-menacing charge. The trial court then proceeded to resentence Harack according to the sentence agreed to by the state. At no time prior to the end of the hearing did Harack actually withdraw his motion to withdraw his original plea; thus, the motion was pending.

{¶ 22} *After the hearing was over,* the trial court issued a hand-written judgment entry, which was then file-stamped. Simultaneously file-stamped was an entry entitled "withdrawing defendant's motion to withdraw plea of no contest," one entitled "waiver of issuance of new complaint, service, and new arraignment; order" and one entitled "judgment entry finding defendant guilty and imposing sentence." These documents were file-stamped at the exact same time, with each bearing the stamp date and time as 2010 December 23 PM 3:54. It is therefore impossible to say that the court executed an entry regarding withdrawing the motion prior to the other entries.

---

1. It is overwhelmingly clear in examining the transcripts of Harack's original plea hearing and sentencing that Harack's previous attorney had not informed Harack of the reporting requirement.

{¶ 23} While the documents were filed simultaneously with each other, the state has not produced any evidence or reference to the record to demonstrate that Harack's motion was ever withdrawn *prior to* the trial court's judgment entry journalizing the new plea agreement. In the absence of any evidence to the contrary, Ohio law is clear that an appellate court must assume the regularities of the proceedings and the presence of sufficient evidence to support the trial court's decision. *State v. Lewis,* Fayette App. No. CA2010–08–017, 2011-Ohio-415, 2011 WL 334831, ¶ 23.

{¶ 24} The state next argues that a trial court speaks through its judgment entries. See *State v. Smith,* Butler App. No. CA2009–02–038, 2010-Ohio-1721, 2010 WL 1534121. We agree. However, this only bolsters the fact that Harack's motion was pending at the time the trial court accepted the terms of the new plea agreement. The trial court's hand-written judgment entry, created after the hearing was over, specifically chronicles what occurred during the hearing. The journal entry lists the following actions: (1) Harack's original no-contest plea to child enticement was withdrawn, (2) the original charge was amended, (3) Harack entered a new no-contest plea to the amended charge, (4) a finding of guilt, and (5) re-imposition of the same sentence, without the sex-offender classification and the accompanying registration and reporting requirements. The journal entry clearly does not state that Harack withdrew his motion prior to the court's journal entry. With an agreed-upon new plea and sentence, the motion became moot.

{¶ 25} In a separate entry, Harack withdrew his previous motion to withdraw his original plea and stated that he would do so, "in consideration of the state's offer." While the state argues that Harack's motion was actually withdrawn in conjunction with his withdrawal of the plea, the transcript does not support this proposition. The words "in consideration of" indicate the reason Harack would agree to withdraw his motion provided the trial court accepted the new plea agreement offered by the state. Moreover, "in consideration of" is not necessarily a statement with sequential, chronological, or temporal implications.

{¶ 26} It becomes inconsequential that the trial court's judgment entry did not discuss the manifest-injustice issue that the parties would have litigated if they had not previously resolved the issue by agreement. The state does not raise as error the fact that the trial court's entry did not set forth specific findings of fact or conclusions of law, and the lack of such findings or conclusions does not create a subject-matter jurisdictional defect. If the trial court did not adequately address the pertinent issues in its entry permitting the withdrawal of Harack's initial plea, this would be an error invited by the parties, because of the way in which they jointly presented their agreement, in a single transaction as "one ball

of wax." Neither party would be in a position to take advantage of an error they both invited.

{¶ 27} The law does not require vain acts, nor discussion of moot issues.[2] Once the parties were brought before the trial court by the filing of Harack's motion, they then offered their agreement for the trial court's acceptance. The state expressly recognized, both at the time of the hearing and even on appeal,[3] that manifest injustice occurs when a defendant is misled into thinking that the offense does not carry a registration requirement. See *State v. Powell*, 188 Ohio App.3d 232, 2010-Ohio-3247, 935 N.E.2d 85, ¶ 38 (finding manifest injustice where defendant was not told that reporting time for sexual classification was 15 years and when defendant should not have been sentenced as a Tier 1 offender for misdemeanor voyeurism).

{¶ 28} Neither the state nor Harack asked the court to rule on the motion, and the only reasonable and natural inference is that the parties considered the issue moot. The parties simply presented an alternate plea agreement, one negotiated by the parties and accepted by the trial court during the hearing. Once the trial court accepted the new plea agreement and journalized its judgment, there was no need to make findings regarding the motion to withdraw the plea. There was never a need for the trial court to discuss manifest injustice once Harack actually withdrew his plea and the new plea terms were accepted in open court.

{¶ 29} The parties were properly before the court upon a motion, which invoked the subject-matter jurisdiction of the court. See *State v. Buckwald*, Lorain App. No. 09CA009695, 2010-Ohio-3543, 2010 WL 2990881. The trial court had proper subject-matter jurisdiction throughout the hearing. Even if a motion is withdrawn during a hearing, there is no legal authority to suggest that subject-matter jurisdiction is taken away from the court, particularly over an issue resolving an allegation of manifest injustice. Subject-matter jurisdiction does not magically disappear from origins of the constitution, the Ohio Revised Code, or even Crim.R. 32.1. With or without a motion, a court has inherent authority to correct manifest injustice. "[T]o correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1.

{¶ 30} The dissenting opinion below suggests that this court should reverse the case at bar based on what the dissent perceives as a conflict between the

---

2. Black's Law Dictionary (9th Ed. 2009) 1099 defines "moot" as "[h]aving no practical significance; hypothetical or academic."

3. The state argues in its reply brief that it could have "conceded the motion without amending the charge." However, the state did amend the charge, and the amendment became a term of the new plea agreement.

transcript and the trial court's subsequent journal entry. There is not a conflict between the transcript and the trial court's journal entry.

{¶ 31} Moreover, the state's assignment of error, as presented in the context of the facts and circumstances of the proceedings below, challenges the trial court's exercise of subject-matter jurisdiction,[4] not the content of the journal entries nor the timing of their filings. The state argues that the trial court had *no* legal basis to exercise its authority over the proceedings. However, as established above, the trial court *had* authority to exercise subject-matter jurisdiction over Harack's motion to withdraw his original plea. Once the jurisdiction issue is resolved, this court is not in a position to determine *how* the trial court went about exercising its authority, because we were not asked to do so. Our decision today does not "affirm the modification," as stated by the dissent, but rather acknowledges the trial court's authority to preside over the proceedings. Once the terms of the plea agreement were agreed upon by both parties and adopted by the trial court, those terms, and the way in which they were implemented through the journal entries, were no longer appealable to this court. The trial court held the proper authority to preside over the plea agreement as presented by officers of the court. As the concurring opinion expounds upon, it was the state's decision to modify Harack's conviction from criminal enticement to aggravated menacing, not the decision of this court.

{¶ 32} The trial court never lost jurisdiction throughout the proceedings below. The state is bound by the terms of the plea agreement, and its single assignment of error is overruled.

Judgment affirmed.

RINGLAND, J., concurs separately.

POWELL, P.J., dissents.

RINGLAND, Judge, concurring separately.

{¶ 33} I concur in the analysis and resolution of the state's single assignment of error. I write separately, however, to emphasize that any alleged error or procedural malady arising from this matter is tied directly to the state's decision to enter into a new plea agreement.

{¶ 34} As the record clearly indicates, it was the state, and not the trial court, that induced, encouraged, and otherwise invited Harack to rescind his motion to withdraw his no-contest plea by entering into a new plea agreement so that the

---

4. The state's assignment of error—"the trial court erred when it withdrew the defendant's plea of no contest in the absence of a post-sentence motion"—asserts that there was no motion pending. However, even the dissent determined that the record "clearly" demonstrated that the motion was pending at the time of the hearing before the trial court.

charge could be amended. Although this is not the typical example of an invited error, the rationale behind that doctrine still applies to preclude the state from taking advantage of any error the trial court may have committed by accepting and implementing the parties' new plea agreement. *State v. Petit*, Butler App. No. CA2009–03–084, 2009-Ohio-6925, 2009 WL 5155998, ¶ 35, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 102 (stating that "a party cannot take advantage of an error that the party invited or induced the court to commit"). In turn, while it may be true that "[p]arties to an action cannot, through invited error, confer jurisdiction where none exists," as noted above, the trial court had jurisdiction throughout the pendency of these proceedings. See *State v. Minkner*, 194 Ohio App.3d 694, 2011-Ohio-3106, 957 N.E.2d 829, ¶ 25; *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *Davis v. Wolfe* (2001), 92 Ohio St.3d 549, 751 N.E.2d 1051.

{¶ 35} That said, even if I were to find that the court had somehow surrendered its jurisdiction, that loss of jurisdiction could be attributed solely to the instigation of the state. The state cannot claim loss of jurisdiction based on its invited error where the court previously exercised such jurisdiction. The trial court, therefore, certainly had the authority to act in accordance with the parties' wishes by accepting and implementing their plea agreement as requested.

{¶ 36} I also write separately to address the state's claim that the "trial court should not be allowed to permit" Harack to avoid the reporting requirements that come with a criminal child-enticement conviction by amending the charge to aggravated menacing. Although stated previously, it bears repeating that it was the state, and not the trial court, who agreed to enter into a new plea agreement. Any attempt by the state or the dissent to now shift the blame to the trial court for accepting and implementing this new plea agreement is improper.

POWELL, Presiding Judge, dissenting.

{¶ 37} I cannot agree to affirm the modification of Harack's conviction from criminal child enticement to aggravated menacing. Therefore, I respectfully dissent from the majority's decision.

{¶ 38} Clearly, Harack's motion to withdraw his plea was still pending at the time of the hearing before the trial court. The motion claims a manifest injustice due to ineffective assistance of counsel when trial counsel allegedly did not inform Harack of the sexual-offender-classification requirements. See Crim.R. 32.1.

{¶ 39} At the hearing, Harack's counsel told the court that he had "been in conversations with the prosecutor's office about amending the conviction from criminal child enticement to aggravated menacing, leaving the court's sentence in tact [sic] as it what was ordered last May but for the sex offender registration requirement by virtue of the amendment that a portion of the sentence would be terminated."

{¶ 40} The trial court stated that the issue at the original plea was whether Harack understood the consequences of his plea. After receiving acknowledgment from the prosecutor that she agreed with Harack's withdrawing his plea, the trial court said that if Harack's no-contest plea was withdrawn, the charge remained criminal child enticement, which, the court said, "is going to be amended today to [an R.C.] 2903.21, aggravated menacing charge?"

{¶ 41} After Harack's counsel offered Harack's plea, the trial court indicated that the plea to the original charge was withdrawn, the matter was back on the docket, the charge was amended to aggravated menacing, to which a plea was made. The trial court then imposed a sentence without the sexual-offender-classification requirements.

{¶ 42} It is well established that a court speaks through its journal entries. *State v. Workman*, Clermont App. No. CA2009–07–039, 2010-Ohio-1011, 2010 WL 918056, ¶ 12. The journal controls if there is a conflict between the journal and the opinion of the court. See *id.*; see also *State v. Ionna* (Aug. 6, 1986), Hamilton App. No. C–850730, 1986 WL 8521.

{¶ 43} The court's journal indicates that Harack's motion to withdraw his plea was withdrawn at the same time that the plea was withdrawn and a new plea was accepted to the amended charge. No finding of a manifest injustice was made. The state argues on appeal that the court did not have jurisdiction, because the journal shows the enabling motion had been withdrawn. I agree and note that the journal also indicates that the motion was never granted. Instead of allowing the transcript to control in this case, I would reverse the trial court's action for lack of jurisdiction. Accordingly, I respectfully dissent from the majority decision.